# In re O-Z- & I-Z-, Respondents

*Decided April 2, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who suffered repeated beatings and received multiple handwritten anti-Semitic threats, whose apartment was vandalized by anti-Semitic nationalists, and whose son was subjected to degradation and intimidation on account of his Jewish nationality established that he has suffered harm which, in the aggregate, rises to the level of persecution as contemplated by the Immigration and Nationality Act.

Jon Landau, Esquire, Philadelphia, Pennsylvania, for respondents

Elizabeth J. Dobosiewicz, Deputy District Counsel, for the Immigration and Naturalization Service

Before: Board Panel: SCHMIDT, Chairman; HURWITZ and ROSENBERG, Board Members.

HURWITZ, Board Member:

In a decision dated October 10, 1996, an Immigration Judge granted the respondents asylum under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) (1994). The Immigration and Naturalization Service has appealed the grant of asylum. The appeal will be dismissed.

## I. FACTUAL BACKGROUND

The respondents are a father and son who are natives of Russia and citizens of Ukraine. They entered the United States on March 19, 1994, and are seeking asylum on the basis of their Jewish nationality. The respondent[1] testified that he faced years of housing and employment discrimination on

---

[1] Our use of the term "respondent" will refer only to the father unless otherwise indicated, although it is understood that both the father and son are respondents in this case. We note that only the father gave testimony at the deportation hearing.

account of his nationality before Ukraine obtained its independence from the former Soviet Union in 1991. However, his asylum claim is based primarily on events which occurred after 1991.

The respondent testified that before coming to the United States, he resided with his son and his Russian wife in the Ukrainian city of Kharkiv. On February 12, 1992, he attended a political rally at which he gave a short speech promoting democracy and unification with Russia. Immediately after he finished his speech, someone grabbed him and began to beat him. He recognized the insignia on the clothing of his attacker as a symbol of "Rukh," a nationalistic, pro-Ukrainian independence movement. The respondent required stitches on his lip and eyebrow from the beating. That evening, he discovered a leaflet from Rukh in his pocket, with the message "Kikes, get away from Ukraine." He testified that he began to receive similar anti-Semitic leaflets at home in his mailbox or slipped under the door. The record contains one of the leaflets he received in 1993.

In March 1992, a month after the attack at the rally, the respondent's apartment was vandalized. The door had been broken down, furniture was ripped open, some of his possessions were stolen, others were smashed, and a half dozen leaflets from Rukh were left at the scene. The leaflets warned that "kikes" and "Moskali," a derogatory term for Russian nationals living in Ukraine, should leave Ukraine to the Ukrainians.

On January 3, 1993, the respondent was attacked on his way home from work. He heard a voice saying, "Sasha, we've been waiting for you for quite some time." He was thrown to the ground and kicked. During the beating, the attackers repeatedly warned him to take his "Moskal" wife and "mixed" son out of Ukraine. He sustained a rib injury from the attack.

On July 3, 1993, the respondent and his son were physically assaulted at a bus stop near their home by four men who were calling them derogatory names and making anti-Semitic remarks. The respondent was pushed to the ground, and when his son tried to come to his aid, the assailants picked him up and dropped him on the pavement. The beating left bruises on the respondent's torso, and his son sustained an injury to his right knee, which required surgery.

The respondent also recounted the abuse his son endured at school on account of his Jewish background. In 1991, his class was required to read nationalist literature promulgated by Rukh. In December of that year, he was dragged into a corner by some classmates who made anti-Semitic comments and beat him. Also, in December 1993, he was cornered in the men's room by his classmates and forced to remove his pants to show that he had been circumcised. He did not return to school after this incident.

The respondent testified that he reported the burglary as well as the January 1993 and July 1993 assaults to the police. He testified that the police promised to "take care of [it]" on each occasion, but that no action was ever taken.

## II. IMMIGRATION JUDGE'S DECISION

The Immigration Judge found that the respondent had suffered past persecution in Ukraine on account of his Jewish nationality. Under the regulations, a finding of past persecution gives rise to a presumption of a well-founded fear of persecution unless a preponderance of the evidence establishes that, since the time the persecution occurred, conditions in the respondent's country have changed to such an extent that he no longer has a well-founded fear of being persecuted in that country. 62 Fed. Reg. 10,312, 10,342 (1997) (to be codified at 8 C.F.R. § 208.13(b)(1)(i)) (interim, effective Apr. 1, 1997); *Matter of H-*, 21 I&N Dec. 337 (BIA 1996). Finding that the presumption of a well-founded fear had not been rebutted in this case, the Immigration Judge granted asylum to both respondents.

## III. ARGUMENTS ON APPEAL

On appeal, the Service argues that the respondent failed to meet his burden of proof to establish that he suffered past persecution or that he has a well-founded fear of persecution. Specifically, the Service contends that the harm suffered by the respondent does not rise to the level of persecution and was not inflicted on account of any one of the five enumerated grounds in the Act. *See* section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1994). The Service asserts that the respondent experienced only "isolated acts of random violence perpetrated by unknown individuals. At most, the respondent was the victim of discrimination and harassment in an area that is growing increasingly dangerous." The Service further claims that the respondent has not shown that the persecution was "government-directed or condoned." Finally, the Service argues that the respondent no longer has a well-founded fear of persecution in Ukraine, citing to the background material on country conditions for the proposition that anti-Semitism has ceased to be a government policy.

## IV. ANALYSIS

With regard to the Service's contention that the harm suffered by the respondent and his son does not rise to level of persecution, we note that the respondent was physically attacked on three occasions. His son endured beatings at school and required surgery to treat an injury he incurred during the July 3, 1993, beating. Furthermore, the respondent's apartment was broken into, his furniture and possessions were destroyed, and valuables were stolen. The respondent repeatedly received anti-Semitic fliers and written threats at his home. Finally, the respondent's son suffered extreme humilia-

tion when he was forced to undress by his classmates. We find that these incidents constitute more than mere discrimination and harassment. In the aggregate, they rise to the level of persecution as contemplated by the Act.

Furthermore, the record reflects that in each instance, the persecutors were motivated by a desire to punish the respondent and his son on account of their Jewish nationality. The respondent's attacker at the demonstration bore a Rukh insignia, and the respondent found an anti-Semitic Rukh leaflet in his pocket that evening. He continued to receive anti-Semitic leaflets at his home, some of which contained handwritten, personalized threats. The January 1993 and July 1993 assaults were accompanied by anti-Semitic comments. The vandals who burglarized the respondent's apartment and destroyed his possessions left a half dozen anti-Semitic leaflets in the apartment, indicative of the identity of the perpetrators and the motive behind the incident. These incidents amount to more than "isolated acts of random violence," as characterized by the Service. The respondent and his son were directly targeted for persecution on account of their Jewish nationality. Therefore, we conclude that the multiple beatings, repeated and personalized threats delivered to the respondent's home, the vandalization and destruction of property, and the intimidation and humiliation of his son, inflicted on account of his Jewish nationality, constitute past persecution. Sections 101(a)(42)(A), 208 of the Act; *Matter of H-, supra*.

With regard to the Service's suggestion that the incidents of persecution were not "government-condoned," we note that the respondent reported at least three of the incidents to the police, who took no action beyond writing a report. It appears that the Ukrainian Government was unable or unwilling to control the respondent's attackers and protect him or his son from the anti-Semitic acts of violence. *Singh v. INS*, 94 F.3d 1353 (9th Cir. 1996); *Matter of Villalta*, 20 I&N Dec. 142, 147 (BIA 1990),

Furthermore, we agree with the Immigration Judge that the presumption of a well-founded fear of persecution has not been rebutted by a preponderance of the evidence in this case. The record does not establish that, since the time the persecution occurred, conditions in Ukraine have changed to such an extent that the respondent no longer has a well-founded fear of being persecuted in that country. *Matter of H-, supra*; 8 C.F.R. § 208.13(b)(1)(i); The record contains a Department of State profile of country conditions for Ukraine, dated June 1996, which the Service quotes as stating that "[a]nti-Semitism ceased to be a government policy" in that country. Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Ukraine-Profile of Asylum Claims & Country Conditions* 6 (June 1996) [hereinafter *Profile*]. This generalized statement, however, is insufficient to rebut the regulatory presumption of a well-founded fear. We take administrative notice of the 1996 Department of State country reports on human rights practices for Ukraine, which is incorporated by reference in the *Profile. See* Committees on Foreign Relations and International

Relations, 105th Cong., 1st Sess., *Country Reports on Human Rights Practices for 1996* 1180 (Joint Comm. Print 1997) [hereinafter *Country Reports*]; *see also Janusiak v. INS*, 947 F.2d. 46, 47 (3d Cir. 1991) (acknowledging the Board's power to take administrative notice of country conditions); *Matter of S-M-J-*, 21 I&N Dec. 722, at 728 n.2 (BIA 1997); *Matter of R-R-*, 20 I&N Dec. 547, 551 n.3 (BIA 1992), and cases cited therein (stating that it is well established that administrative agencies may take administrative notice of commonly known facts).

While the 1996 country report states that the national government "speaks out against anti-Semitism," the report also acknowledges that "[s]ocietal anti-Semitism exists, and the Government has not prosecuted anti-Semitic acts under the law forbidding the sowing of interethnic hatred." *Country Reports, supra*, at 1187, 1189. It goes on to state that in western Ukraine, Jewish groups "credibly accuse some local Ukrainian ultranationalists of fostering ethnic hatred and printing anti-Semitic tracts" and "charge that local authorities have not taken action against those who foment ethnic hatred." *Id.* at 1189. The country report also notes that "death threats were made against Jews in Kharkiv," the respondent's hometown. *Id.* This not only lends support to the respondent's assertion that the local police refused to investigate the instances of violence perpetrated by ultra-nationalists against him and his son, but it also supports their well-founded fear of persecution in Ukraine despite the national expansion of Jewish rights. Thus, we agree with the Immigration Judge that the regulatory presumption of a well-founded fear of persecution has not been rebutted. 8 C.F.R. § 208.13(b)(1)(i).

## V. CONCLUSION

We concur with the findings of the Immigration Judge that the respondent has established that he suffered past persecution as defined by the Act on account of his Jewish nationality. Section 101(A)(42)(a) of the Act; 8 C.F.R § 208.13(b)(1). We further find that the Service has failed to show by a preponderance of the evidence that conditions in Ukraine have changed to such an extent that a reasonable person in the respondent's position would no longer have a well-founded fear of persecution. *Matter of H-, supra*; 8 C.F.R § 208.13(b)(1)(i), Accordingly, the respondent is entitled to the regulatory presumption of a well-founded fear of persecution in Ukraine.

**ORDER:** The appeal of the Immigration and Naturalization Service is dismissed.