

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-31-2005

# Setiawan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2105

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Setiawan v. Atty Gen USA" (2005). *2005 Decisions*. Paper 314.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/314

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>**NOT PRECEDENTIAL**</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2105

STEFANUS SETIAWAN,
Petitioner

v.

*ALBERTO GONZALES,
Respondent

*(Amended pursuant to Rule 43(c), Fed. R. App. P.)

_____

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

(No. A79-310-376)

Submitted pursuant to LAR 34.1(a) July 12, 2005

Before: ALITO, BECKER, and GREENBERG, *Circuit Judges*.

(Opinion Filed: October 31, 2005)

_____

OPINION OF THE COURT

*PER CURIAM*:

Stefanus Setiawan seeks review of an order from the Board of Immigration Appeals denying his request for withholding of removal. We deny the petition.

## I.

As we write only for the parties, we do not set forth the full background of the case. The sole issue raised by the petition for review is whether substantial evidence supports the Board's finding that Setiawan does not face a clear probability of persecution if he returns to Indonesia. Setiawan argues that the substantial evidence standard is not satisfied because any reasonable adjudicator would have reached two conclusions: first, that he was persecuted in the past; and second, that he is in any case more likely than not to face future persecution. We consider each argument in turn.

### A.

An applicant is entitled to withholding of removal if upon return to his home country his life or freedom would be threatened because of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). The Attorney General must grant withholding of removal if petitioner demonstrates a "clear probability" of such persecution. *INS v. Stevic*, 467 U.S. 407, 413 (1984); *Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003). A "clear probability" means it is "more likely than not" that the petitioner would be subject to persecution. *Stevic*, 467 U.S. at 429-30. A showing of past persecution gives rise to a rebuttable presumption of a

2

well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1); *Li v. AG of the United States*, 400 F.3d 157, 162 (3d Cir. 2005).

Whether petitioner faces a clear probability of persecution is a question of fact reviewed under the substantial evidence standard. *See Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

**B.**

Setiawan claims any reasonable adjudicator would be compelled to find that he was persecuted in Indonesia. We disagree.

Setiawan's claim of past persecution is based on five incidents: a March 1995 incident in which street thugs first demanded money from and then assaulted Setiawan and his friends, and in which the police refused to pursue the attackers; an October 1995 incident in which passers-by stole items from Setiawan as he lay injured by the side of the road after a motorcycle accident; a mob attack in 1996, in which Setiawan escaped personal injury but was almost hit by oncoming traffic as he fled the scene; rioting in 1998, during which his mother's business was burned to the ground and his sister was almost raped (but which did not directly affect Setiawan, who was attending college in

3

Malaysia); and a 1999 incident in which Setiawan was attacked by street thugs and rendered unconscious from a head injury when he attempted to protect his sister from physical harassment as they were walking to their car after attending Christmas mass. The malefactors in these incidents were all native Indonesians. Setiawan asserts that they were animated by anti-Chinese and anti-Christian animus, but he does not allege any specific facts to directly corroborate this speculation.

Based on the facts alleged, a reasonable adjudicator might find, as did the IJ and the Board, that the incidents in question either did not involve discrimination on the basis of an enumerated characteristic or did not otherwise rise to the level of persecution. The fact that Setiawan and his family members were, in the circumstances he describes, readily identifiable as ethnic or religious minorities does not prove they were targeted because of their Chinese ancestry or Christian faith. Assuming *arguendo* that they were, the episodes of crime and mob violence to which Setiawan refers, although disturbing, do not constitute unequivocal evidence of persecution as defined by our past cases. *See, e.g.*, *Abdille v. Ashcroft*, 242 F.3d 477, 494 (3d Cir. 2001) ("ordinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum." ); *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998) ("Mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world, generally is not sufficient to permit the Attorney General to grant asylum"); *Fatin v. INS*, 12 F.3d 1233,

4

1240 & n.10 (3d Cir. 1993) (noting that "the term 'persecution' denotes extreme conduct" and "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional.").

Our conclusion that the Board's finding is supported by substantial evidence draws strong support from *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), which addressed virtually identical circumstances and claims. The petitioner in *Lei* was a Chinese Christian from Indonesia who alleged that she and her family had been robbed on several occasions by unknown individuals motivated by religious and ethnic hostility. *See id.* at 532-33. Notwithstanding record evidence of "widespread animus against ethnic Chinese," we concluded that "the evidence of general ethnic difficulties would not compel a reasonable factfinder to conclude that the intrusions were 'on account of' Lie's ethnicity or religion." *Id.* at 535-36. We also concluded that, even assuming that the incidents alleged were motivated by ethnicity, the incidents alleged were not "sufficiently severe to be considered persecution." *Id.* at 536.

We find no plausible basis for distinguishing *Lei* from the instant case. Like Lei, Setiawan is a Chinese Christian from Indonesia alleging persecution on the basis of religion and ethnicity. Also like Lei, Setiawan's factual allegations involve "isolated criminal acts, perpetrated by unknown assailants, which resulted only in the theft of some personal property and a minor injury." *Id.* Given the substantial similarities between the two cases, we cannot say that Setiawan has established persecution where Lei did not.

Setiawan contends that the IJ's distinction between persecution and instances of civil unrest and street crime is based on a false and potentially dangerous dichotomy. Because these categories of incidents may overlap, he argues, the IJ's approach threatens to render vast numbers of persecuted people artificially ineligible for relief. We do not understand the IJ's determination to proceed from the assumption that criminality, civil unrest, and persecution are mutually exclusive categories. Instead, we interpret the IJ's decision to mean that the instances of crime and civil unrest alleged here did not rise to the level of persecution. Given the record below and our decision in *Lei*, we do not think the IJ's conclusions are unreasonable.

Finally, we find Setiawan's reliance on *Surita v. INS*, 95 F.3d 814 (9th Cir. 1996), and *Matter of O-Z- & I-Z-*, 22 I&N Dec. 23 (BIA 1998), unavailing. Unlike the petitioner in *Surita*, Setiawan does not allege that circumstances in Indonesia would prevent him from leaving his home or earning a livelihood. *See* 95 F.3d at 819 (holding that petitioner, a Hindu and ethnic Indian living in Fiji, had been persecuted where, among other things, "she was compelled to quit her job of more than ten years and was afraid to leave her home."). *O-Z- & I-Z-* is likewise distinguishable on several grounds. First, the BIA in that case found record evidence proving that petitioners had been repeatedly attacked "on account of their Jewish nationality." *See* 22 I&N at 7. No such evidence was adduced here. Second, the BIA in *O-Z- & I-Z-* noted ample evidence of the kind of severe and extreme conduct needed to establish persecution. *See id.* at 6-7 (observing that

6

petitioners had suffered beatings requiring surgery, the theft or destruction of their furniture and possessions, and extreme humiliation).  In distinguishing these cases, of course, we do not deny the seriousness of Setiawan's allegations.  We merely point out that the IJ's reasoning in this case is compatible with the precedents Setiawan invokes.

In sum, we hold that substantial evidence supported the IJ's determination that Setiawan had not been persecuted.

## C.

Setiawan next argues that the Board erred because, even if he was not persecuted in the past, he submitted sufficient evidence to prove he faces a clear probability of persecution in the future.  The record does not support this claim.

As discussed above, the Board could reasonably have found that the facts Setiawan alleged did not suffice to establish a reasonable, individualized fear of persecution.  Thus, Setiawan's sole basis for anticipating future persecution is documentary evidence concerning general country conditions.

Setiawan interprets various documents in the record to offer evidence for the following propositions: religious intolerance and religiously motivated violence are increasingly evident in Indonesia; societal attitudes towards ethnic Chinese Christians have been worsening, in spite of efforts by the Indonesian government to promote religious tolerance; Indonesian government officials often allow religiously motivated violence to occur with impunity; there were a number of attacks on Christian churches in

7

1999, most of which the government did not fully investigate; and attacks on ethnic Chinese Indonesians were still occurring despite the cessation of large-scale anti-Chinese riots like those that occurred in 1998.

Substantially similar evidence was presented in *Lie*, which concluded that "the evidence in the record does not establish that there is a pattern or practice of persecution of Chinese Christians in Indonesia." *Id*. at 537. *Lei* noted two reasons for rejecting the pattern or practice claim. First, the violence against Chinese Christians "does not appear to be sufficiently widespread as to constitute a pattern or practice." *Id*. at 537. Second, "this violence seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence." *Id*. Because both reasons are fully applicable here, the Board was not compelled to find that the documentary evidence in the record established a clear probability of future persecution.

Finally, Setiawan claims that the Board's decision should be vacated because its opinion did not consider record evidence concerning allegedly deplorable country conditions. An agency's decision must indeed consider pertinent record evidence to be affirmed on appeal. *See Berishaj v. Ashcroft*, 378 F.3d 314, 325 (3d Cir. 2004) (noting that "[i]rrespective of [article's] reliability, ... the article was in the administrative record and the IJ was obliged to address it."); *Sotto v. INS*, 748 F.2d 832, 837 (3d Cir. 1984) ("If the administrative record fails to reveal that ... [material] evidence has been fairly considered, the proper course is to remand the case to the INS so that the Service may

8

evaluate such evidence and consider its effect on the application as a whole.")  In this case, however, the Board's admittedly conclusory opinion incorporated the IJ's reasoning by reference. *See* App. 3 ("We agree with the Immigration Judge who noted that the respondent did not establish persecution under the Act based either on his ethnicity or on his religion.") (Board of Immigration Appeals Order).  Thus, the pertinent inquiry is whether the IJ properly considered the evidence in the record. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate.").  Setiawan does not even argue that the IJ failed to consider record evidence.  Accordingly, we see no cause for remand.

In sum, a reasonable factfinder would not be compelled to find that Setiawan has established a clear probability of future persecution.  Absent such a finding, Setiawan is not entitled to withholding of removal.  We thus deny the petition for review.