

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-2008

# Elezi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2786

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Elezi v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1021.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1021

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2786
_____

INDRIT ELEZI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondents

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A97-396-841
Immigration Judge: Henry S. Dogin

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 12, 2008
Before: FUENTES, ALDISERT and GARTH, Circuit Judges

(filed: June 16, 2008 )
_____

OPINION
_____

PER CURIAM

       Petitioner Indrit Elezi, a native and citizen of Albania, entered the United States

without inspection on June 25, 2003 at Laredo, Texas.  He was 17 years old at the time.

On June 28, 2003, he was served with a Notice To Appear for removal proceedings,

alleging that he was removable under Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 212(a)(6)(A)(i), as an alien who was present in the United States without being admitted or paroled. These allegations were admitted through counsel at a preliminary hearing. Removal proceedings were transferred from San Antonio, Texas to Newark, New Jersey. On January 20, 2004, Elezi filed his application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture ("CAT"), 8 C.F.R. §§ 1208.16(c), 1208.18, claiming a fear of persecution on account of political opinion due to his support of the Democratic Party of Albania. Elezi's I-589 Form was forwarded to the United States Department of State for review and comment, and the State Department responded by referring the Immigration Judge to the Country Report on Human Rights Practices for Albania for 2004.

In support of Elezi's asylum application, Elezi's father, Nazif, submitted a statement, dated November 30, 2003, in which he detailed the suffering of his family under the old Communist Party. His own father (Elezi's grandfather) was arrested and imprisoned in 1947. After his release, his property was confiscated, he was labeled an "enemy of the state," he could only get menial jobs and his children were denied an education. Nazif started his own family in 1973. He was active in the Democratic Party and "security people" followed him everywhere. On August 20, 1985, while trying to escape from them, he crashed into a train and lost his leg.

2

In March 1992, the Democratic Party finally came to power. Unfortunately, in 1997, the new Socialist Party toppled the Democratic Party regime. Nazif's business was taxed heavily, and eventually destroyed by the Socialists. He was out of work, and under surveillance by the security police once again. On February 20, 2000, he was placed under house arrest for 11 months because of his membership in the Democratic Party and The Association of Formerly Politically Persecuted of Tirana.

Nazif's statement (as translated) ends this way:

> The last seven years have been a real nightmare for my family and me. I can say the same thing for my son Indrit, who was threatened that he was going to be kidnapped many times in exchange of money or in a deal for the politicians in power. His life was always in danger. He was never free to do what he needed to do, to play, or even to study normally like other children. Finding myself in such situation, facing real threats for my son, my only heir, I was forced to allow my son to leave his house and his homeland in order to save his life and also to give him a chance in life so he could benefit from the American freedom and democracy.

A.R. 366-67.

Elezi testified at his removal hearing that he was a member of the Democratic Party Youth Forum. He participated in demonstrations, and distributed literature and hung posters for his father during the local elections of October 2000. In January 2003, he was stopped by two police officers who asked him if he was Nazif's son, and, when he replied that he was, they told him to tell his father to keep his mouth shut and be very careful. In February 2003, two Socialist Party members accosted Elezi on the street, beat

3

him and kicked him, and said they wanted the Democrats dead. Although he was bleeding and suffered injuries to his legs, kidneys, and face, he did not seek medical treatment. Within days of this event, his father decided that his life was in danger and that he should leave Albania. The IJ asked Elezi why his father did not mention the February 2003 assault in his statement, and Elezi replied that, as far as he knew, his father had mentioned it, and stated: "Maybe you don't have his letter over there. What can I say?" A.R. 119.

The IJ denied relief. He found that the January 2003 threat did not rise to the level of persecution, because it was directed at Elezi's father and not at him personally. The IJ also found that Elezi did not testify credibly about the February 2003 beating. He did not have scars or marks on his face, and his father failed to mention any specific beating in his statement. His father talked only of kidnapping threats, and Elezi failed to mention any kidnapping threats. These inconsistencies went to the heart of Elezi's claim of persecution. The IJ further concluded that, because his father had been safe for the past two years, and is still politically active, Elezi had little to fear on account of this relationship should he be returned to Albania. Thus, he could not show a well-founded fear of future persecution. Elezi's application for withholding of removal was denied, as was his application under the CAT.

On August 2, 2005, the Board of Immigration Appeals affirmed without opinion pursuant to 8 C.F.R. § 1003.1(e)(4). On May 17, 2007, the Board reissued its decision

4

sua sponte, because of a problem with respect to the mailing of the original decision. Elezi filed a timely petition for review on June 15, 2007.

We will deny the petition. We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). When the Board summarily affirms, the decision we review is that issued by the IJ. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). Factual determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). We may not disturb the agency's decision merely because we would have decided the case differently. See Gabuniya v. U.S. Attorney General, 463 F.3d 316, 321 (3d Cir. 2006).

Whether an applicant for asylum has demonstrated past persecution or a well-founded fear of persecution is a factual question which is reviewed under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We also review an adverse credibility determination under the substantial evidence standard. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Under this deferential standard of review, we must uphold the credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We uphold adverse credibility determinations based on omissions and discrepancies that go to the heart of a petitioner's claim. Chen v. Ashcroft, 376 F.3d 215, 224 (3d Cir. 2004).[1]

---

[1] Under the REAL ID Act of 2005, credibility determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the

5

An applicant for asylum has the burden of establishing that he is unable or unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001). The alien bears the burden of proof. Id. To establish eligibility on the basis of past persecution, an alien must show that he suffered some harm rising to the level of persecution on account of a statutorily protected ground, and that it was committed by the government or forces the government is unable or unwilling to control. Gao, 299 F.3d at 272. An alien who establishes past persecution enjoys a presumption of a well-founded fear of future persecution, Lukwago v. Ashcroft, 329 F.3d 157, 174 (3d Cir. 2003), but, if the alien cannot show past persecution, he may still establish a well-founded fear of future persecution by demonstrating a subjective fear of persecution, and that a reasonable person in the alien's circumstances would fear persecution if returned to the country in question, Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003).

We conclude that substantial evidence supports the IJ's determination that the January 2003 incident does not rise to the level of persecution. See Chavarria v. Gonzales, 446 F.3d 508, 518 (3d Cir. 2006) ("[W]e have refused to extend asylum

applicant's claim." Pub. L. No. 109-13, § 101(a)(3)(B)(iii), 119 Stat. 231, 303 (2005). However, this provision of the REAL ID Act applies only to cases where the applicant applied for asylum or other relief after May 11, 2005. See id. § 101(h)(2), 119 Stat. at 305. Because Elezi applied for asylum in 2004, our pre-REAL ID Act standard applies.

protection for threats that, while sinister and credible in nature, were not highly imminent or concrete or failed to result in any physical violence or harm to the alien."). Substantial evidence also supports the IJ's adverse credibility determination with respect to the February 2003 assault. Contrary to Elezi's contention on appeal, it is indeed significant that his father, who went to the trouble of giving a detailed statement in support of his son's claim, omitted any reference to this incident. He gave nonspecific details of kidnapping threats and nothing more. The assault would have been a dramatic event for the family, and it was alleged to have been the pivotal event that precipitated Elezi's departure from Albania. When the IJ asked Elezi why his father did not mention the February 2003 assault in his statement, Elezi's explanation was insufficient.

There is, as Elezi contends, ample credible evidence of a *family* history of persecution on account of activity on behalf of the Democratic Party, but that evidence does not erase the troublesome inconsistency between Elezi's removal hearing testimony and his documentary evidence concerning the February 2003 assault, the pivotal event in Elezi's individual history of persecution. Elezi contends in his brief that his case is similar to that of the alien in Matter of O-Z- & I-Z-, 22 I. & N. Dec. 23 (BIA 1998), involving the physical abuse of a father and son, but that case does not involve an adverse credibility finding, and thus does not support his claim for relief. Elezi's strongest argument is that his father's narrative statement was autobiographical in nature, and an overview of the family's history, and was not intended to be a comprehensive listing of

7

everything that happened to Elezi himself.  But this contention, while it would explain why Elezi's father omitted any reference to the February 2003 assault, does not explain why Elezi omitted any reference to threats of kidnapping in his removal hearing testimony.  Elezi gave no indication whatever in his testimony that he had ever been threatened with kidnapping.  Therefore, the record does not compel reversal of the IJ's adverse credibility determination.[2]

Because Elezi cannot show past persecution, he is not entitled to the presumption of a well-founded fear of future persecution, and he did not make the required showing that he would be persecuted by the Socialist Party if he is returned to Albania.  The 2004 Country Report describes the rise of the Democratic Party within Albania, and with that, the willingness and ability of the Albanian government to protect Elezi from the lawlessness of certain members of the Socialist Party.  The Country Report states that municipal elections took place in 2003, and the Democratic and Socialist parties held the majority of seats in the Parliament.  Furthermore, we are not compelled to disagree with the IJ that Elezi's father has not encountered any problems in the two years preceding the removal hearing.  See Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005) ("[W]hen family members remain in petitioner's native country without meeting harm, and there is no

---

[2] Even assuming arguendo that the inconsistencies noted by the IJ between Elezi's testimony and his father's statement are minor and not material, see Gabuniya, 463 F.3d at 322, we doubt in any event that these two incidents, a single beating resulting in injuries that were treated at home by the family and a nonimminent threat that did not result in any physical injury, would compel reversal of the agency decision that Elezi did not suffer persecution.  See Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005).

8

individualized showing that petitioner would be singled out for persecution, the reasonableness of a petitioner's well-founded fear of future persecution is diminished").

Because Elezi failed to show past persecution or a reasonable fear of future persecution under the lower burden of proof required for asylum, he is necessarily ineligible for withholding of removal. See Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430-32 (1987). In addition, the IJ concluded that Elezi did not meet his burden of establishing that it is more likely than not that he will be tortured upon his return to Albania, 8 C.F.R. §§ 208.16, 208.18, and we conclude that the record does not compel a different conclusion.

Finally, Elezi's contention that his right to due process was violated by the Board's affirmance without opinion, and affirmance by a single Board member rather than a three-member panel, is contrary to established precedent in this circuit. Dia, 353 F.3d at 245. His case satisfies the criteria for streamlining given that his arguments were covered by settled asylum law, 8 C.F.R. § 1003.1(e)(4); cf. Smriko v. Ashcroft, 387 F.3d 279, 281 (3d Cir. 2004) (single Board member acted arbitrarily and capriciously by issuing an affirmance without opinion in case presenting novel and substantial legal issues without precedent), and his due process right to an individualized determination was accorded to him by the IJ, who issued a reasoned decision. See Dia, 353 F.3d at 240.

For the foregoing reasons, we will deny the petition for review.