[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 22, 2010
JOHN LEY
CLERK

No. 09-14139
Non-Argument Calendar

_____

Agency Nos. A079-477-219
A079-477-220

NIKOLAI ALEXANDROVICH LADNOV,
OLGA IVANOVNA SIDOROVA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 22, 2010)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Nikolai Alexandrovich Ladnov, through counsel, petitions for review of the

Board of Immigration Appeals' ("BIA") order dismissing his appeal from the Immigration Judge's ("IJ") order denying his petition for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16.(c). He included his wife, Olga Sidorova, as a derivative beneficiary on his application. On appeal, Ladnov argues that he suffered past persecution in Estonia because of his ethnicity and race, so he should be presumed as having established a well-founded fear of future persecution. He argues that the IJ and the BIA erred in classifying the past persecution as mere "incidents of harassment and discrimination" that did not rise to the level of persecution. Ladnov argues that the BIA and IJ erred when determining if he was persecuted because they failed to aggregate the events of "discrimination, ostracism, and violence" he faced in Estonia. He contends that the facts of his case are similar to those of the applicants in *Matter of O-Z & I-Z*, 22 I&N Dec. 23. He contends that his expert witness and the Estonian country report provided uncontroverted evidence that the Estonian government is unwilling or unable to protect him. He further contends that conditions in Estonia have not improved.[1]

---

[1] Ladnov fails to challenge on appeal the BIA's denial of protection under the CAT. Thus, he has abandoned this issue. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned," and that "passing references to issues are insufficient to raise a claim for appeal, and such issues are deemed abandoned").

2

We review only the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). "Insofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Id.* We review the determination by the BIA that an applicant is statutorily ineligible for asylum or withholding of removal under the "substantial evidence test." *Id.* at 1283. We review the BIA's legal determinations *de novo*. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). "To reverse a factual finding by the BIA, [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." *Farquharson v. U.S. Att'y Gen.*, 246 F.3d 1317, 1320 (11th Cir. 2001).

An alien who arrives or is present in the United States may apply for asylum. *See* 8 U.S.C. § 1158(a)(1), INA § 208(a)(1). To qualify for asylum, the alien must be a "refugee." *See* 8 U.S.C. § 1158(b)(1), INA § 208(b)(1). A "refugee" is any person who is unwilling to return to his home country or to avail himself of that country's protection "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a). The applicant satisfies this burden by showing, with credible evidence: (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that his statutorily

3

listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b). We have defined persecution as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda*, 401 F.3d at 1231 (quotations omitted). "Mere harassment does not amount to persecution." *Gonzalez v. Reno*, 212 F.3d 1338, 1355 (11th Cir. 2000). "[E]mployment discrimination which stops short of depriving an individual of a means of earning a living does not constitute persecution." *Barreto-Clara v. U.S. Att'y Gen.*, 275 F.3d 1334, 1340 (11th Cir. 2001) (holding that although petitioner suffered employment discrimination, lost his job as a taxi driver, and was forced to take menial work, he was not persecuted).

An applicant who has demonstrated past persecution is presumed to have a well-founded fear of future persecution. 8 C.F.R.§ 208.13(b)(1). However, when an applicant fails to demonstrate past persecution, he must establish that he has a well-founded fear of future persecution by showing (1) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country, or (2) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which he is a part. 8 C.F.R § 208.13(b)(2), (b)(3)(i). An alien who cannot demonstrate past persecution also has the burden of showing that it would not be reasonable for the alien to relocate in the home country, unless the persecution is by the government or is government-sponsored.

4

8 C.F.R. §208.13(b)(3)(ii).

Under the INA, an alien shall not be removed to her country of origin if her life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. § 1231(b)(3), INA § 241(b)(3). This standard for withholding of removal is more stringent than the well-founded fear standard for asylum. *Huang v. U.S. Att'y Gen.*, 429 F.3d 1002, 1010-11 (11th Cir. 2005). Thus, if an applicant is unable to meet the well-founded fear standard for asylum, he generally is unable to qualify for withholding of removal or deportation. *See Al Najjar*, 257 F.3d at 1292-93.

Here, substantial evidence supports the BIA's decision affirming denial of Ladnov's petition for asylum and withholding of removal. In concluding that Ladnov was ineligible for asylum, and consequently, withholding of removal, the BIA noted that Ladnov testified regarding "significant incidents of harassment and discrimination at the hands of ethnic Estonians in October 1993 and April 1998." However, the BIA noted that despite this harassment Ladnov was able to obtain a degree in mechanical engineering and receive a visa to study in the United States. The BIA also adopted the IJ's reasoning regarding past persecution. Thus, we review the portion of the IJ's order that discusses this issue. *See Al Najjar*, 257 F.3d at 1284.

Contrary to Ladnov's assertion, the IJ stated that he cumulatively considered the events that Ladnov described, but found that they did not rise to the level of persecution and appeared to be isolated incidents. Substantial evidence supports the IJ's determination. Ladnov complained that he was ostracized as a child and developed a speech impediment. Regarding the 1993 school-dance attack, Ladnov was called names and suffered a broken nose from an attack. Regarding the 1998 tram-stop incident, Ladnov was hit and suffered a split lip, hematomas, and a headache. All of these may have been harmful, but did not rise to the level of persecution. *See Sepulveda*, 401 F.3d at 1231 (noting that persecution is an "extreme concept"). Moreover, considering that large intervals of time elapsed between the events that Ladnov described, substantial evidence exists to indicate that these events did not rise to the level of past persecution.

The IJ noted that Ladnov alleged that he was deprived of jobs in Estonia because of his ethnicity. However, the IJ found that Ladnov's "contention finds little documentary support in the record." Ladnov testified that he applied for 25 or 30 mechanical engineering positions in Estonia, but was denied all of them because he had a Russian accent when he spoke Estonian. He also noted that he worked "odd-jobs to survive" because he was unable to obtain a mechanical engineering job. Thus, although he could not find a mechanical engineering position, he was able to find other work, so this alleged employment discrimination

6

did not constitute persecution.  *See Barreto-Clara*, 275 F.3d at 1340.

The BIA adopted the IJ's reasoning regarding Ladnov's failure to demonstrate a reasonable possibility of future persecution.  In pertinent part, the IJ noted that Ladnov's family remained in Estonia, and that the incidents to which Ladnov testified occurred many years ago.  Thus, the IJ correctly noted that Ladnov failed to demonstrate that Estonia has "a pattern or practice" of discriminating against other dark-skinned people.  8 C.F.R § 208.13(b)(2).  Moreover, Ladnov did not show that "a reasonable possibility" exists that he will be persecuted.  8 C.F.R § 208.13(b)(3)(i).

Although Ladnov argues that the facts of his case are similar to those of the petitioner in *Matter of O-Z & I-Z*, 22 I&N Dec. 23, the BIA found that the mistreatment cited in *Matter of O-Z & I-Z-* was significantly more severe than the incidents of harassment and discrimination described by Ladnov.  In *Matter of O-Z & I-Z*, the respondents suffered a series of violent attacks, in which they were physically harmed, over a two-year period.  *See Matter of O-Z & I-Z*, 22 I&N Dec. 23.  Here, Ladnov testified to events of discrimination he endured as a child, the 1993 school-dance incident, the 1997 marriage license incident, the 1998 tram-stop incident, and his inability to find a mechanical engineering job.  These events occurred far apart and appear to be "a few isolated incidents of verbal harassment or intimidation," so they do not constitute persecution.  *See Sepulveda*, 401 F.3d at

7

1231.

Moreover, Professor Ralph S. Clem's affidavit does not indicate otherwise. Although Clem noted that an "extremely hostile atmosphere" exists in Estonia "for persons of ethnic Russian descent," he could not definitively state whether Ladnov would be persecuted if he returned to Estonia. Clem also did not state that the government was unwilling or unable to protect Ladnov. Instead, Clem attested that "Ladnov would very likely be subject to continued discrimination in the workplace, and quite possibly, continuing physical danger, in Estonia because of his Russian ethnicity."

In addition, the United States Department of State's 2007 Country Report for Estonia does not support Ladnov's contentions. The Report noted that the Estonian government "generally respected the human rights of citizens and the large ethnic Russian noncitizen community," and that problems only existed in some areas. The report noted that "[i]nstances of overt hostility based on ethnicity or race were infrequent, but they occurred." The report also noted that Estonian law "prohibits incitement to hatred, violence, or discrimination" based upon, *inter alia*, nationality, race, skin color, language, and social origin. Thus, the evidence does not compel a contrary conclusion. *See Farquharson*, 246 F.3d at 1320. Because Ladnov fails to satisfy his burden to obtain asylum, he fails to satisfy the higher burden for withholding of removal. *See Al Najjar*, 257 F.3d at 1292-93.

**PETITION DENIED.**