**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1663
_____

EMIL SILVAN DAMSYIK,

Petitioner

v.

ATTORNEY GENERAL,

Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals

(B.I.A. Nos. A98-413-387, A098-413-388 and A098-413-389)

Submitted Under Third Circuit L.A.R. 34.1(a),
July 12, 2010

Before: FUENTES, ALDISERT, and ROTH, Circuit Judges.

(Filed: September 10, 2010)

———————————————

OPINION OF THE COURT

———————————————

FUENTES, Circuit Judge:

Emil Sylvan Damsyik, a native and citizen of Indonesia, applied for asylum in

2004 on the basis of past persecution by the military due to his political opinions. The

-1-

immigration judge ("IJ") granted asylum, describing the case as a "close call," but deeming Damsyik's testimony "extremely credible" and "highly consistent."  (App. 16, 17).  The Board of Immigration Appeals ("BIA") reversed this determination.  Damsyik filed a timely petition for review.  We will grant the petition and remand for the BIA to consider the evidence in the aggregate in determining whether past persecution occurred and to apply the proper standard of review.[1]

## I.

Because we write primarily for the parties, we set forth only the facts and history that are relevant to our conclusion.[2]  In May 2002, while still living in Indonesia, Damsyik saw a teacher at his son's school abusing students.  He fought the teacher, bloodying the teacher's nose.  Weeks later, two men asked to speak with Damsyik about the incident.  He followed them to a soccer field behind nearby military barracks.  Four men wearing Army uniforms joined them.  One man explained that he was the younger brother of the teacher with whom Damsyik had fought.  The men beat Damsyik into unconsciousness.  When he awoke the men were gone.  Damsyik was bleeding, his knee ached and his vision was blurry.  He went to the hospital and reported the crime to the police.  The police did not act.

---

[1]This court has jurisdiction to review the BIA's final orders of removal pursuant to 8 U.S.C. § 1252(a).

[2] We derive these facts from the IJ's opinion, the statement of Damsyik attached to his Application for Asylum and Withholding of Removal, and his testimony before the IJ.  As noted, the IJ found Damsyik "extremely credible" and "highly consistent."

Frustrated with the lack of response, in July 2002 Damsyik wrote letters to two national newspapers describing the soldiers' conduct. One confirmed receipt and promised to print it, but neither paper did so. That same month two different men approached Damsyik. One held a gun to his head and told him to drive to a gym on army property near the same military barracks. There, a group of soldiers beat him until he passed out. Again, Damsyik woke alone. This time, he sought private treatment rather than going to the hospital. Instead of filing a police report, he spoke privately with a single officer.

Damsyik wrote a second letter and mailed it to the same newspapers. He again received a promise that it would be published. It was not. In August, Damsyik began received threatening phone calls. "It would be better for us to sacrifice one person, than to sacrifice our good name," one caller said. (App. at 39.) Another caller warned him, "Don't do anything stupid! We the Armed Forces will not accept it that you say anything in front of the people." (Id.) Several times while Damsyik was at work, men on motorcycles came to his house and threatened him and his family. A message was left that "twice is only warnings" and there would be no more warnings. (Id. at 94-95.)

That same month, Damsyik and his wife decided to leave Indonesia for the United States. They sold their car, obtained travel visas, and put their house on the market. For nine months, they received no offers on the house. Damsyik kept away from his home fifty percent of the time, often staying at his aunt's house. Damsyik and his wife accepted

the first offer they received for the house and left Indonesia at the end of May 2003. Damsyik arrived in the United States on a visitors' visa and subsequently applied for asylum.

The IJ, relying on the two beatings as evidence of past persecution, granted Damsyik and his wife and son asylum. The IJ found that "the only reasonable inference" was that the military acted against Damsyik in response to his "expression of an adverse opinion against [the military]" and that this criticism constituted an "expression of a political opinion." (Id. at 21.) The IJ further found that Damsyik had proven a reasonable possibility of future persecution if he returned to Indonesia. The IJ failed to reach Damsyik's claims for withholding of removal and relief under the Convention Against Torture. The BIA subsequently held that the IJ erred in finding the beatings were on account of political opinion, instead deeming them personal in nature. It found no evidence that Damsyik's attackers knew he had contacted the newspapers, and concluded that regardless, the beatings were due to Damsyik's attempts to report individuals' wrongdoing rather than any opposition to the military or government. Focusing on the second beating, the BIA decided that even if it was on account of an imputed political opinion, it did not constitute "past persecution." The BIA also found that there was not sufficient evidence to establish the existence of a "well-founded fear of future persecution." Damsyik filed a timely appeal, arguing chiefly that the BIA applied an incorrect standard of review to the IJ's grant of asylum.

We review the BIA's legal determinations <u>de novo</u>. <u>Filja v. Gonzales</u>, 447 F.3d 241, 251 (3d Cir. 2006). This <u>de novo</u> review is subject to the deferential principles set forth in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). <u>Kaplun v. Att'y Gen.</u>, 602 F.3d 260, 265 (3d Cir. 2010). We will uphold the BIA's factual findings if they are supported by "reasonable, substantial, and probative evidence on the record considered as a whole." <u>Filja</u>, 447 F.3d at 251 (citation omitted). Although this standard is deferential, "that deference is expressly conditioned on support in the record." <u>Toure v. Att'y Gen.</u>, 443 F.3d 310, 316 (3d Cir. 2006) (quotation marks and citation omitted). Moreover, "[t]he BIA may not ignore evidence in the record that favors the petitioner." <u>Kang v. Att'y Gen.</u>, 611 F.3d 157, 164 (3d Cir. 2010) (citation omitted).

To be eligible for asylum, Damsyik must demonstrate that he is unable or unwilling to return to Indonesia due to past persecution or a well-founded fear of persecution on account of his political opinion, namely his criticism of the military. 8 U.S.C. § 1101(a)(42). "Persecution includes, but is not limited to, threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." <u>Espinosa-Cortez v. Att'y Gen.</u>, 607 F.3d 101, 107 (3d Cir. 2010) (internal quotation marks and citations omitted).

The IJ found that the first beating was retaliatory and, by itself, not sufficient to amount to past persecution. However, the IJ found "reasonable and permissible and

supported by substantial evidence" the inference that the second beating was due to the letters Damsyik sent to the newspapers. (App. at 19.) The IJ concluded that the second beating, in combination with the first, were severe enough to establish past persecution. Upon review, the BIA deemed both beatings personal in nature. Alternatively, even assuming that the second beating was "on account of an imputed political opinion," it did not deem that beating, by itself, sufficient to constitute past persecution. (Id. at 4.)

"Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R § 1003.1(d)(3)(I); see also Kaplun, 602 F.3d at 268. The language in the BIA's opinion does not suggest any deference to the IJ's findings of fact, nor does it reference or apply this "clearly erroneous" standard. For example, the BIA wrote, "we do not find that the second beating was aimed at quelling the respondent's political opinion." (App. at 4.) This factual conclusion contradicts the IJ's finding that the "only reasonable inference" was "that the military was upset with [Damsyik's] expression of an adverse opinion." (Id. at 21.) Similarly, the BIA's opinion states that the second beating was "by the teacher's brother," (id. at 4), despite the IJ's finding, based upon Damsyik's testimony, that the brother was not present during the second beating at the hands of the military (id. at 18). Rather than review the IJ's factual findings for clear error, the BIA appears to have applied a de novo standard throughout its opinion.

The BIA's conclusion in the alternative, that even if the second beating was in response to Damsyik's "political opinion," it fell short of constituting past persecution, does not cure this defect. The BIA relied on case law holding that certain isolated violent events did not rise to the level of past persecution. In doing so, it ignored the IJ's finding that the "second beating combined with the first" was "severe enough to meet a past persecution threshold." (App. at 19.) Given that both the BIA and the IJ found that the first beating was personal in nature and not in response to Damsyik's opinions regarding the military, we find no error in excluding it from the past persecution analysis. Nonetheless, the BIA is required to consider relevant incidents in the aggregate. Toure, 443 F.3d at 318-19 (3d Cir. 2006). In addition to these two beatings, the record included evidence regarding threatening phone calls to Damsyik from the military, which the IJ noted. (App. at 22.) The callers, who identified themselves as "the Armed Forces," made threats including the statement: "One person is nothing to us! If you want us to shoot you, it will be an easy job!" (App. at 39.)[3] These threats should have been considered, in conjunction with the second beating, in making a determination regarding whether, in the aggregate, Damsyik experienced persecution. See Voci v. Gonzales, 409 F.3d 607, 614-15 (3d Cir. 2005) (holding that a series of incidents, which included threats, "[i]n the aggregate . . . rise to the level of persecution as contemplated by the Act." (quoting In re

---

[3] This statement is found in an attachment to Damsyik's asylum application, which the IJ described as "exactly what the respondent testified to in court." (App. at 17.) The IJ found Damsyik "extremely credible." (Id.)

O-Z & I-Z, 22 I. & N. Dec. 23 (1998)); see also Li v. Att'y Gen., 400 F.3d 157, 169 (3d Cir. 2005) (holding that a series of hardships, "[i]n the aggregate . . . constitute[d] deliberate imposition of severe economic disadvantage which could threaten his family's freedom if not their lives."). The BIA may not simply ignore such evidence. Kang, 611 F.3d at 164. Accordingly, we will remand to the BIA to apply the proper standard in reviewing the IJ's factual determinations and to properly consider in the aggregate all the evidence that might support a finding of past persecution.

The IJ also found, in the alternative, that Damsyik had proven a reasonable possibility of future persecution if he returned to Indonesia. Damsyik established, the IJ ruled, that "there is at least a reasonable possibility . . . of being targeted upon return to qualify him as a matter of statute for asylum." (App. at 24.) Although in Kaplun we dealt specifically with a CAT claim, we held that "expressions of likelihood" in the context of "immigration generally" constitute findings of fact and thus should be reviewed "only for clear error." Kaplun, 602 F.3d at 270. The BIA provided scant analysis of the question of whether sufficient evidence of a "well-founded fear of persecution" existed. (App. at 5.) We therefore direct the BIA, upon remand, to clarify its treatment of this issue and to consider the relevance of our decision in Kaplun in doing so.

**III.**

For the foregoing reasons, we grant Damsyik's petition for review and remand to the BIA for further proceedings consistent with this opinion.