# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2022

Lyle W. Cayce
Clerk

No. 20-60367

Rosaura Aurora Sanchez-Amador; Iverson Joshua Martinez-Sanchez; Angel Arturo Martinez-Miranda,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A206 890 807
BIA No. A206 890 808
BIA No. A216 020 833

Before Davis, Smith, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Rosaura Aurora Sanchez-Amador, a native and citizen of Honduras, sought asylum in the United States after the Department of Homeland Security charged that she, her husband Angel Arturo Martinez-Miranda, and her minor son Iverson Joshua Martinez-Sanchez were removable as aliens

No. 20-60367

present in the United States without being admitted or paroled.[1] The immigration judge ("IJ") and Board of Immigration Appeals ("BIA") rejected her application, so Sanchez-Amador petitioned for our review. Given the extensive and complex discussion of her application below, we focus on a dispositive question. Namely, whether an applicant's subjective belief that authorities would be unwilling or unable to help them is sufficient for asylum eligibility when paired with country condition evidence supporting that belief, notwithstanding that the underlying events do not support that conclusion. We think not, so we DENY the petition.

I

On April 20, 2018, the IJ held a hearing on the merits of Sanchez-Amador's application. She testified that she had been sexually abused throughout her childhood by her cousin, uncle, stepfather, and landlord's son. She has confided at least some of these events to her mother, husband, a church friend, and her therapist, but did not report them to the police. Sanchez-Amador believed that the police would not help her unless she could provide a video, photograph, or other physical evidence. She also testified that Honduran police often do not act on sexual assault claims, that her mother and aunt also suffered sexual assaults, and that Honduran women in

---

[1] Specifically, Sanchez-Amador included her husband and son in her application for relief claiming asylum, withholding of removal, and protection under the Convention Against Torture. Because Sanchez-Amador does not challenge the denial of Convention Against Torture relief, that issue is abandoned on appeal. *See CenturyTel of Chatham, LLC v. Sprint Commc'ns Co.,* 861 F.3d 566, 573 (5th Cir. 2017).

It is unclear whether Sanchez-Amador also challenges denial of relief under withholding of removal, so that basis for relief may be abandoned as well. In any event, withholding of removal requires the same showing as asylum yet presents "a higher bar" than asylum does. Thus, because Sanchez-Amador has not carried her burden as to asylum, she cannot be entitled to relief on withholding of removal grounds either. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 224 (5th Cir. 2019) (quotation omitted).

general are vulnerable to sexual assault due to a culture of "machismo." When she was fifteen, Sanchez-Amador became pregnant and moved in with her husband, Martinez-Miranda, to escape her stepfather.

Martinez-Miranda later moved to the United States in order to support Sanchez-Amador's university studies. In June 2014, Sanchez-Amador was living in her in-laws' apartment when she returned home to find a note from the MS-13 gang threatening to kill her and her son if she did not pay 1,000 lempiras each month. She did, but three months later she received another note demanding 3,000 lempiras per month. She believed that MS-13 targeted her for extortion because she was studying rather than working, and her husband was in the United States supporting her financially. The second amount proved too much, so Sanchez-Amador moved in with her mother to make MS-13 think that she had separated from her husband and would, therefore, be a less lucrative target.

The next month, a member of MS-13 named Macuto confronted her. Sanchez-Amador explained that she was separated from her husband and did not have money to give him. Macuto replied that if she could not give him money, she had to be "his woman." Sanchez-Amador interpreted this as Macuto's demand that she join the gang and have sex with him. She refused, and Macuto told her that MS-13 would find her no matter where she hid. He gave her a one-week deadline to either pay the amount he demanded or give in to his alternative demands. Sanchez-Amador reported these events to the police. The police said they would investigate but that it would take two weeks. Rather than wait, Sanchez-Amador fled and eventually made it to the

No. 20-60367

United States. She fears returning because she believes that MS-13 will find her and harm her.[2]

On June 25, 2018, the IJ denied Sanchez-Amador's application. The IJ found that both Sanchez-Amador and Martinez-Miranda were credible witnesses. Nevertheless, three of the four social groups proposed by Sanchez-Amador were not cognizable. Further, although the IJ found that Sanchez-Amador suffered persecution, she failed to show that this persecution was motivated by her membership in one of her proposed social groups. Likewise, Sanchez-Amador failed to demonstrate the requisite fear of future persecution if returned to Honduras. What Sanchez-Amador fears, the IJ reasoned, is general violence and civil strife, not harm directed at her and motivated by her membership in a particular social group. Further still, Sanchez-Amador failed to show that the government was either unable or unwilling to act because she never reported the sexual abuse she suffered, and she left before the police could complete their investigation into Macuto's threats. Because Sanchez-Amador failed to show that she suffered past persecution or had a well-founded fear of future persecution that meets the requirements for asylum, the IJ found that she was not eligible for it or withholding of removal. The IJ also found that Sanchez-Amador had failed to meet her burden for CAT relief. The BIA adopted and affirmed the IJ decision and also denied asylum on the basis of an additional group Sanchez-Amador proposed.

---

[2] Martinez-Miranda also testified to, over the course of his life, being threatened by MS-13 and witnessing violence they perpetrated. He also testified that he believed that neither he nor the police could protect his family from them.

No. 20-60367

## II

To obtain asylum, Sanchez-Amador must demonstrate that she is a "refugee" within the meaning of the Immigration and Nationality Act. 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13. She can do so by showing that she has suffered past persecution or has a well-founded fear of future persecution on account of a protected ground. 8 U.S.C. § 1101(a)(42)(A). Here, that protected ground is membership in one of Sanchez-Amador's proposed "particular social group[s]." *Id.* Because her persecutors were non-government actors, she must also establish that the authorities were "unable or unwilling to control" them. *Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006); *Shehu v. Gonzales*, 443 F.3d 435, 437 (5th Cir. 2006) (government must condone persecution or "demonstrate complete helplessness") (quotation omitted); *Mendez-Galdamez v. Barr*, 772 F. App'x 155, 156 (5th Cir. 2019) (per curiam); *Arevalo-Velasquez v. Whitaker*, 752 F. App'x 200, 201 (5th Cir. 2019) (per curiam).[3]

We only review the decision of the BIA unless the IJ's decision influenced the BIA's decision. *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir.

---

[3] After the BIA decided the matter, the administration changed its guidance on asylum claims. The IJ and BIA relied on *Matter of A-B-* (*A-B-I*), 27 I. & N. Dec. 316 (A.G. 2018), in denying Sanchez-Amador's application. On June 16, 2021, the Attorney General issued *Matter of A-B-* (*A-B-III*), withdrawing *A-B-I* and instructing the BIA to "follow pre-*A-B-I* precedent." 28 I. & N. Dec. 307, 309 (A.G. 2021). We subsequently clarified that *A-B-III* has not undermined circuit precedent. *Jaco v. Garland*, 24 F.4th 395, 403–07 (5th Cir. 2021) (discussing, *inter alia*, *Gonzales-Veliz*, 938 F.3d at 219). Thus, our caselaw on the "unable or unwilling" standard remains intact. *See Meza Benitez v. Garland,* No. 19-60819, 2021 WL 4998678, at *4 n.1 (5th Cir. Oct. 27, 2021) (per curiam); *see, e.g.*, *Garcia-Gonzalez v. Garland,* No. 20-60581, 2022 WL 243908, at *1 (5th Cir. Jan. 25, 2022) (per curiam); *Rivera-Sorto v. Garland*, 858 F. App'x 768, 769 (5th Cir. 2021) (per curiam); *Castillo-Martinez v. Garland*, No. 20-60276, 2021 WL 4186411, at *1 (5th Cir. Sept. 14, 2021) (per curiam); *Perez-Gomez v. Garland*, 857 F. App'x 814, 815 (5th Cir. 2021) (per curiam); *Orellana-Martinez v. Garland*, No. 20-60598, 2021 WL 4597774, at *2 (5th Cir. Oct. 6, 2021) (per curiam).

No. 20-60367

2018) (citation omitted). Here, the BIA adopted and affirmed the IJ's opinion, expressly basing its decision on "the reasons discussed by the [IJ]," so we review it as well. *See Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997).

We review legal conclusions de novo and factual findings for substantial evidence. *Revencu v. Sessions*, 895 F.3d 396, 401 (5th Cir. 2018). Factual findings will be upheld if they are "supported by record evidence and [are] substantially reasonable." *Id.* We only reverse if the evidence compels a contrary conclusion. *Id.* (citation omitted). Merely "drawing two inconsistent conclusions from the evidence" is not enough. *Id.* (quotation omitted). Thus, Sanchez-Amador bears "the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006) (citation omitted).

### III

Substantial evidence supports the BIA's finding that Sanchez-Amador did not establish that the government is unable or unwilling to control the alleged persecutors. Because that alone defeats Sanchez-Amador's asylum application, we need not reach the alternate bases for the BIA's denial.

To begin, Sanchez-Amador only seeks review of the BIA's determination on the "unable or unwilling" standard vis-à-vis her fear of MS-13 retaliation. Thus, she has waived any challenge to the BIA's findings as they pertain to her stepfather and other private actors who have or may yet persecute her. *See CenturyTel*, 861 F.3d at 573; *cf. Inuwa v. Garland*, 859 F. App'x 719, 720 (5th Cir. 2021) (per curiam) (failure to challenge BIA credibility determination). At most, her brief mentions the issue in passing but does not argue it. *See Kia v. Barr*, 794 F. App'x 403, 408 (5th Cir. 2019) (per curiam) (finding waiver in those circumstances).

Even if that issue was not waived, Sanchez-Amador testified that she never told the police about the outrages she suffered. We have already held that "subjective belief that it would have been futile to report . . . abuse to authorities" is not sufficient to overturn the BIA under the substantial evidence standard. *Arevalo-Velasquez*, 752 F. App'x at 202.[4] True, Sanchez-Amador has presented substantial country condition evidence speaking to how ineffective the authorities have been at combatting domestic violence. But one would be hard-pressed to find that the authorities were unable or unwilling to help her if she never gave them the opportunity to do so. Thus, we cannot say that "no reasonable factfinder could reach a contrary conclusion." *Chen*, 470 F.3d at 1134.

As for MS-13, substantial evidence likewise supports the BIA's conclusion. Recall that Sanchez-Amador reported Macuto's threats to the police, who told her that they would "proceed with the claim." When she checked in, the police informed her "that the process would take at least two weeks."[5] She fled before those two weeks expired, and there is no evidence of what happened with the claim. Thus, the evidence supports the BIA's finding that Sanchez-Amador "successfully reported one incident with the gang member to the police, but did not pursue the issue."[6] The fact that the

---

[4] *Arevalo-Velasquez* is not precedential, but we find it persuasive. *See Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006).

[5] Sanchez-Amador presents conflicting accounts of when she checked in with the police. In a sworn statement, she testified that she did so a week after filing the complaint. In her oral testimony, she said that she did so after she returned home. In her petition for review before this court, she says that she "followed up the next day."

[6] This case is therefore distinct from cases where the applicant sought help from the government and that help was not forthcoming. *Cf. Tabora Gutierrez v. Garland*, 12 F.4th 496, 504 (5th Cir. 2021) (in the Convention Against Torture context, police instructed applicant to flee the country); *id.* at 506 (Davis, J., dissenting) (applicant cited "numerous incidents to demonstrate that Honduran public officials had been willfully blind to the torture he suffered"); *id.* at 506-07 ("Tabora Gutierrez said that he went to the

No. 20-60367

police could not complete their investigation to Sanchez-Amador's satisfaction within a single week does not compel the conclusion that they were unable or unwilling to help her.[7]

## IV

To successfully apply for asylum, Sanchez-Amador must show that the Honduran authorities are unable or unwilling to protect her from her persecutors. Because the BIA found that she did not make that showing, and because substantial evidence supports that finding, we DENY the petition for review.

---

police to press charges against the attackers, but the police did not investigate the attacks or take steps to arrest the individuals who had beaten him").

[7] Indeed, Sanchez-Amador's own expert testified that police "prefer to investigate crimes" like "gang violence."