# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 3, 2022

Lyle W. Cayce
Clerk

No. 19-60620

Lamy Bertrand,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of the Order of the
Board of Immigration Appeals
Agency No. A209 395 475

Before Davis, Elrod, and Haynes, *Circuit Judges*.
Jennifer Walker Elrod, *Circuit Judge*:

Lamy Bertrand, a native and citizen of Haiti, petitions for review from an adverse decision by the Board of Immigration Appeals. Bertrand contends that the BIA erred in denying his requests for asylum and withholding of removal on the ground that the Haitian government was neither unable nor unwilling to prevent the violence committed against him. Because Bertrand does not carry his burden to show any error by the BIA, we DENY the petition for review.

No. 19-60620

Lamy Bertrand applied for admission to the United States at a California point of entry in 2016. Upon being detained and transferred to a detention center in Texas, Bertrand filed applications for asylum, withholding of removal, and for protection under the Convention Against Torture (CAT). Before the Immigration Judge, Bertrand recounted several violent attacks allegedly committed against him and his family members in Haiti.

Starting in August of 2009, Bertrand began receiving threatening telephone calls, which he attributed to his being a voodoo priest. He testified that he reported at least some of these calls, along with the phone numbers, to the police. About a month later, Bertrand testified that individuals entered his clothing shop, beat him up, cut him with a machete, and started to pour gasoline on him before being run off by a passing police car. Neither Bertrand nor any witnesses recognized his attackers. In the wake of his attack, the police took Bertrand to the hospital and took his report. However, Bertrand testified that while he was still hospitalized, his attackers returned to his shop and destroyed it.

According to Bertrand, another attack occurred in October of that year. Bertrand testified that, while he was away from home, a "group of people" entered his home and killed his sister, his daughter, and another woman. He arrived home to see his uncle and his nephew giving a report to the police and a local judge, who said that they would investigate. In response, Bertrand left to go live with his mother in another city in Haiti, about four to five hours away by car.

Bertrand testified that another incident occurred at mother's house in December of 2009. He says that a group of people with "machete stick[s]" entered his mother's house, beat her, and burned the house down. His mother was hospitalized for around seven days, but Bertrand escaped by

2

running "to the back of the house [and] jump[ing] through a window." His mother filed a police report and, when she was discharged from the hospital, moved with Bertrand to the Dominican Republic, where they stayed together for four years.

In August of 2013, Bertrand obtained a travel visa and moved to Brazil. And in July of 2016, Bertrand left Brazil for the United States, where he arrived later that year.

The IJ denied all requested relief. The BIA affirmed and dismissed his appeal. Bertrand then filed a petition for review in this court. However, the government filed an unopposed motion to remand to the BIA for it to consider "whether further briefing would be appropriate in light of [Bertrand's] claim that the Haitian Government was unable or unwilling to control private actors who threatened [Bertrand]." This court granted the motion and remanded the case to the BIA. On remand, the BIA reaffirmed its original decision, denied all forms of relief, and again dismissed the appeal. In relevant part, the BIA affirmed that Bertrand had not carried his burden to show that the Haitian government was unable or unwilling to protect Bertrand from his attackers.

This petition for review follows. In it, Bertrand does not address the BIA's denial of CAT relief or withholding of removal under 8 U.S.C. § 1231(b)(3). Thus, he forfeits any claim about CAT relief, as well as any claim about withholding of removal that does not overlap with his asylum claim.[1] Therefore, the only questions here are whether: (1) the BIA applied the correct legal standard in determining that Bertrand had not shown the

---

[1] *United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016) ("We have made clear that any issue not raised in an appellant's opening brief is forfeited.").

No. 19-60620

Haitian government to be unable or unwilling to protect him; and (2) substantial evidence supported its conclusion.

This court reviews the BIA's legal conclusions *de novo*, and in appropriate cases applies *Chevron* deference to precedential BIA decisions. *Jaco v. Garland*, 24 F.4th 395, 401 (5th Cir. 2021).[2] "We use the substantial evidence standard to review the IJ's factual conclusion that an alien is not eligible for asylum." *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005). "Under this deferential standard, we will grant a petition for review only when the record evidence 'compels' a conclusion contrary to the agency's determination." *Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020) (quoting *Zhao*, 404 F.3d at 306); *Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009).[3] "The applicant has the burden of showing that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).[4]

---

[2] *Chevron* deference is not relevant here because the BIA's decision was non-precedential.

[3] This is true even when, as here, we must accept the alien's version of the facts because the IJ did not make a credibility determination. *See Gjetani*, 968 F.3d at 396, 397 n.2; *Zhao*, 404 F.3d at 306. The parties do not dispute the standard of review and therefore forfeit any challenge to it. *Bowen*, 818 F.3d at 192 n.8. In any event, for the reasons that follow, the BIA did not err even under *de novo* review. *Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015) ("This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum." (quoting *United States v. Potts*, 644 F.3d 233, 237 n.3 (5th Cir. 2011))).

[4] The Supreme Court has recently emphasized the "very limited role" for courts of appeals in reviewing the Attorney General's discretionary-relief decisions. *Patel v. Garland*, 142 S. Ct. 1614, 1618, 1622–23 (2022) (holding that 8 U.S.C. § 1252(a)(2)(B) precludes federal-court review of factual findings made in the discretionary-relief proceedings enumerated in § 1252(a)(2)(B)(i)). Nonetheless, asylum proceedings under § 1158(a) are not listed in § 1252(a)(2)(B)(i) and are expressly excepted from a companion provision, § 1252(a)(2)(B)(ii). So we may review factual findings in asylum cases, but the

No. 19-60620

The attorney general may grant asylum to "refugees." *Orellana-Monson v. Holder*, 685 F.3d 511, 518 (5th Cir. 2012). Among other requirements, refugees must either have suffered past persecution or have a well-founded fear of future persecution. *Id.* (citing 8 C.F.R. § 208.13(b)). Persecution refers to harm inflicted either by the government or by private actors whom the government "is unable or unwilling to control." *E.g., Sanchez-Amador v. Garland*, 30 F.4th 529, 533 (5th Cir. 2022). Where private actors are concerned, the applicant must show that the government condoned the private violence "or at least demonstrated a complete helplessness to protect the [applicant]." *Shehu v. Gonzales*, 443 F.3d 435, 437 (5th Cir. 2006) (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)). This requires showing "that an alien's home government has 'more than difficulty . . . controlling private behavior.'" *Gonzales-Veliz v. Barr*, 938 F.3d 219, 233 (5th Cir. 2019) (quoting *Matter of A-B-*, 27 I. & N. Dec. 316, 337 (AG 2018) (*A-B-I*), *vacated by Matter of A-B-*, 28 I. & N. Dec. 307 (AG 2021) (*A-B-III*), and *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005) (quoting *In re McMullen*, 17 I. & N. Dec. 542, 546 (BIA 1980))).[5]

---

"substantial evidence" standard strictly limits our ability to disturb them. 8 U.S.C. § 1252(b)(4)(B). Furthermore, "[t]he Supreme Court recently clarified that we have jurisdiction to consider mixed questions of law and fact [under § 1252(a)(2)(D)], holding that 'the application of law to undisputed or established facts is a "questio[n] of law" within the meaning of § 1252(a)(2)(D),'" which excludes "constitutional claims" and "questions of law" from § 1252(a)(2)(B)'s limitations on judicial review. *Alexis v. Barr*, 960 F.3d 722, 730 (5th Cir. 2020) (second alteration in original) (quoting *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1069 (2020)); 8 U.S.C. § 1252(a)(2)(D).

[5] Since the parties' briefs were filed, the Attorney General vacated *A-B-I*, including its "unable or unwilling to control" analysis, in *A-B-III* pending further rulemaking. Nonetheless, this court affirmed in *Gonzales-Veliz* that *A-B-I* merely applied the law of this circuit. *Gonzales-Veliz,* 938 F.3d at 233; *Meza Benitez v. Garland*, No. 19-60819, 2021 WL 4998678, at *4 n.1 (5th Cir. 2021) ("[*A-B-I*] left unchanged the prior law in the Fifth Circuit . . . ."). Because *A-B-I* applied the legal standard also required by this court's

5

The BIA correctly applied this legal standard, and substantial evidence supports its conclusion. The police responded to Bertrand's September 2009 attack, took Bertrand to the hospital, and took a report about the incident. The police, along with a judge, responded to the October 2009 attack on Bertrand's home, took a report, and said that they would investigate. And the police similarly responded to the December 2009 attack on his mother's house—in an entirely different city—and took her report. In the BIA's words, the government "interviewed witnesses, came to the scene of a crime multiple times, and took the respondent to the hospital when he was attacked."

Bertrand has not carried his burden of "showing that the evidence is so compelling that no reasonable factfinder" could agree with the BIA's decision. *Chen*, 470 F.3d at 1134. The first two alleged attacks occurred within roughly one month of each other. The third attack occurred roughly two months later in an entirely different city. And, crucially, neither Bertrand nor any witnesses were ever able to identify the attackers. A government is not "unable or unwilling" to protect against private violence merely because it has difficulty solving crimes or anticipating future acts of violence. Under these circumstances, substantial evidence confirms the conclusions of the IJ and the BIA that the Haitian government was not unable or unwilling to protect him.[6]

---

precedents, the Attorney General's vacation of *A-B-I* in *A-B-III* does not change the "unable or unwilling" standard reflected in *Gonzales-Veliz* and applied in this circuit. *Sanchez-Amador*, 30 F.4th at 533 n.3 ("[O]ur caselaw on the 'unable or unwilling' standard remains intact [post-*A-B-III*].").

[6] Bertrand contends that the BIA impermissibly departed from a precedential BIA decision, *In re O-Z- & I-Z-*, 22 I. & N. Dec. 23 (BIA 1998). In that case, a father and son claimed to have been persecuted in Kharkiv, Ukraine, on the basis of their Jewish

No. 19-60620

Bertrand and *amici* law professors contend that this circuit and others have erred by interpreting the "unable to control" standard to mean "complete helplessness."[7] But these are simply different articulations of the same standard.[8] And, in any event, this panel is bound by precedent to the

---

nationality. *Id.* at 23. The alleged persecution consisted primarily of several violent encounters between February 1992 and July 1993. *Id.* at 24. And the father "reported the [1992] burglary as well as the January 1993 and July 1993 assaults to the police." *Id.* Noting that the police "took no action beyond writing a report," the BIA concluded that the "Ukrainian Government was unable or unwilling to control the respondent's attackers or protect him." *Id.* at 26.

    *O-Z- & I-Z-* is distinguishable on several grounds. First, the BIA in *O-Z- & I-Z-* did not specify whether its holding rested on either the government's unwillingness to protect the respondents or its inability to do so. *Id.* The failure to do anything beyond writing reports is stronger evidence of an unwillingness to help, and a government will likely only be "unable" to help if it is first willing to do so. In this case, there is evidence that the Haitian government was willing to help Bertrand. As the BIA recognized, the government did more than write reports. The police took Bertrand to the hospital, interviewed witnesses, and visited the scene of a crime on multiple occasions.

    Second, the persecution in *O-Z- & I-Z-* occurred over a longer period of time and apparently within the same geographic area. *Id.* at 24. In contrast, the persecution in this case occurred within several months and in different cities. Furthermore, there was evidence that the persecution in *O-Z- & I-Z-* was linked to a specific "nationalistic, pro-Ukrainian independence movement." *Id.* Here, while Bertrand did testify to turning over the phone numbers associated with his threatening calls, neither he nor any witnesses were ever able to identify any of his attackers. For these reasons, the BIA was justified in distinguishing *O-Z- & I-Z-*.

    [7] *Gonzales-Veliz*, 938 F.3d at 233; *Shehu*, 443 F.3d at 437; *see also Garcia-Garcia v. Mukasey*, 294 F. App'x 827, 829 (5th Cir. 2008).

    [8] Both articulations "accomplish the same purpose"; they both require proof that "an alien's home government has 'more than difficulty . . . controlling private behavior.'" *Gonzales-Veliz*, 938 F.3d at 233 (quotation omitted). To that end, both rightly distinguish between the standard difficulties inherent in law enforcement and an utter inability to prevent private violence. As the BIA said on remand, "[a]n unsuccessful investigation is not conclusive evidence that the government was unable or unwilling to protect the respondent."

No. 19-60620

"complete helplessness" articulation. *Mercado v. Lynch*, 823 F.3d 276, 279 (5th Cir. 2016) ("Under our rule of orderliness, 'one panel of our court may not overturn another panel's decision, absent an intervening change in the law. . . .'" (quoting *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008)))).[9]

Moreover, we hold that under either articulation of the relevant standard, the BIA did not err in concluding that Bertrand does not qualify for asylum.  And because Bertrand does not qualify for asylum, he necessarily cannot meet the more stringent showing required for withholding of removal. *Orellana-Monson*, 685 F.3d at 522.

\*        \*        \*

For these reasons, the petition for review is DENIED.

---

Bertrand and *amici* law professors urge courts to instead focus on whether the government can provide the applicant with "effective protection."  But the "unable or unwilling" standard already does that.  This standard looks at whether the government is "completely helpless" to protect the applicant, *i.e.*, completely helpless to provide the applicant with effective protection. *See Gonzales-Veliz*, 938 F.3d at 233–34 (explaining that the government must demonstrate a "complete helplessness" to protect the victim).  Yet even so, standard investigatory constraints—like insufficient evidence—that impede the swift resolution of investigations are not conclusive evidence that the government is "unable or unwilling" to protect an applicant from future violence. *See id.* at 233 (stating that the home government must have "more than difficulty . . . controlling private behavior" (quotation omitted)); *see also Sanchez-Amador*, 30 F.4th at 534 ("The fact that the police could not complete their investigation to Sanchez-Amador's satisfaction within a single week does not compel the conclusion that they were unable or unwilling to help her.").

[9] *See supra* note 7.