# Matter of O-A-R-G-, et al., Respondents

*Decided as amended April 16, 2025[1]*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Where a particular social group is defined by "former" status, Immigration Judges must ensure the persecutor's conduct was based on a desire to overcome or animus toward the respondent's membership in a group defined specifically by that former status, not retribution for conduct the respondent engaged in while a current member of the group.

(2)  Acquiescence in the context of protection under the Convention Against Torture requires a greater degree of governmental complicity than is required to establish a government is unable or unwilling to protect a respondent in the asylum context.

FOR THE RESPONDENTS:  Claudette M. Esparra Ramos, Esquire, Miami, Florida

BEFORE:  Board Panel:  MALPHRUS, Chief Appellate Immigration Judge; GOODWIN and PETTY, Appellate Immigration Judges.

PETTY, Appellate Immigration Judge:

The respondents[2] have appealed the Immigration Judge's denial of their applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture ("CAT").[3]  The lead respondent previously worked as a police officer in Colombia, during which time he was beaten and threatened by the Revolutionary Armed Forces of Colombia ("FARC") because of his participation in operations against

---

[1]  We amend the April 11, 2025, order in this case to correct citations to the regulations and add additional legal authority.

[2]  The respondents are the lead respondent, his unmarried partner, and their minor daughter.  They have each filed separate applications for asylum, withholding of removal, and protection under the regulations implementing the Convention Against Torture.  The daughter is a derivative beneficiary on both of her parents' asylum applications.  Section 208(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(3)(A) (2018).  All of the applications are based on the same facts set forth in the lead respondent's application.  References to the respondent in the singular are to the lead respondent, unless otherwise indicated.

[3]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994)

them.  The respondent now seeks relief and protection from removal based on that harm.  We conclude that the respondent's claim is based on his prior status as a then-serving police officer, rather than his current status as a former police officer.  Thus, he has not shown a nexus between the harm he experienced and fears and his particular social group composed of former police officers.  Accordingly, the respondents are ineligible for asylum and withholding of removal.  We further conclude that the respondents have not established eligibility for CAT protection and will therefore dismiss the appeal.

## I.  BACKGROUND

The relevant facts are not in dispute.  In 2016, the respondent, a native and citizen of Colombia, became an officer of the National Police of Colombia and was later assigned to the Mobile Anti-Riot Squad.  In July 2022, he participated in an operation against the FARC.  During the operation, the National Police recovered military materials and cattle from the FARC.  The day after the operation ended, the respondent was on his way home on a civilian bus when it was stopped by heavily armed men wearing FARC armbands.  Two of the men boarded the bus and directed the passengers to exit.  They were looking for police officers.  The armed men beat nine individuals, including the respondent, with rifle butts.  The respondent was hit in the chest, back, and mouth, resulting in a broken tooth.  The respondent escaped into the jungle and later boarded another bus home.

The respondent reported the incident to the police command 2 days later.  He was offered vacation time but no additional protection because the police commander said he could not assign a policeman to guard another policeman.  While recuperating at home, the respondent received a threatening document written with newspaper clippings that said he had a beautiful family, but it was a pity that they were already dead.  The document also included photos from the respondent's personal phone and indicated that it was from the FARC.  As a result of the threat, the respondent submitted his retirement letter to the National Police on August 22, 2022.

After receiving the threatening letter, the respondents relocated to Bogotá for 2 months while they applied for passports to leave Colombia. During that time, the respondent received one threatening phone call but had no personal encounters with the FARC.  The respondents departed Colombia on November 13, 2022.  They seek asylum and withholding of removal on account of the lead respondent's membership in the proposed particular social groups defined as "men in Colombia the government is unwilling/unable to protect" and "former police officers of Colombia."  *See*

31

sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018).

## II.  DISCUSSION

### A. Particular Social Group Based on Former Status

The respondent's first proposed particular social group of "former police officers of Colombia" is based on a past experience. Past experiences, by definition, cannot be changed. *Matter of S-E-G-*, 24 I&N Dec. 579, 584 (BIA 2008); *see also Matter of M-E-V-G-*, 26 I&N Dec. 227, 242 (BIA 2014); *Matter of C-A-*, 23 I&N Dec. 951, 958 (BIA 2006); *Matter of Acosta*, 19 I&N Dec. 211, 233 (BIA 1985) (recognizing that an immutable characteristic "might be a shared past experience such as military leadership"), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). Thus, the respondent's past experience as a police officer meets the requirement that membership in a particular social group be immutable (or fundamental to one's identity or conscience). *See, e.g.*, *Matter of M-E-V-G-*, 26 I&N Dec. at 237–38, 242; *Matter of Acosta*, 19 I&N Dec. at 233. But even assuming the respondent could also establish that "former police officers of Colombia" is both particular and socially distinct, he has not established that he was or would be harmed on account of his membership in the group. *See* INA §§ 208(b)(1)(B)(i), 241(b)(3)(A), 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A).

With respect to past persecution, the Immigration Judge found that the respondent was harmed and threatened while working as an active member of the National Police because of his participation in operations against the FARC. The respondent acknowledges on appeal that the FARC harmed him because of his actions as a police officer. Except for the single threatening phone call he received while awaiting passports in Bogotá, the respondent was not yet a former police officer at the time of the past harm. Because he was a current police officer at the time of the past harm, that harm could not have been on account of his status as a former police officer.[4]

---

[4]  To the extent the respondent was harmed on account of his then-current employment as a police officer, the claim would fail. Employment is not immutable. *See Matter of M-E-V-G-*, 26 I&N Dec. at 231. The respondent has not suggested that his employment as a police officer is fundamental to his identity or conscience. Moreover, we have held: "[W]e do not afford protection based on social group membership to persons exposed to risks normally associated with employment in occupations such as the police or the military. . . . because persons accepting such employment are aware of the risks involved and undertake the risks in return for compensation." *Matter of C-A-* 23 I&N Dec. at 958

*See Sanjaa v. Sessions*, 863 F.3d 1161, 1165 (9th Cir. 2017) (limiting consideration of whether the applicant was harmed on account of being a former police officer to "evidence of persecution Sanjaa experienced *after* he quit his job").

With respect to the respondent's claim that he has a well-founded fear of future persecution, he has not established that any future harm would be on account of his current status as a former police officer. To establish eligibility for asylum or withholding of removal, an applicant must prove "that the persecutor's motive for the harm is a desire to overcome the protected characteristic" or otherwise based on "animus" against the group. *Matter of M-R-M-S-*, 28 I&N Dec. 757, 760 (BIA 2023); *see also Matter of Acosta*, 19 I&N Dec. at 222 ("[H]arm or suffering had to be inflicted upon an individual in order to punish him for possessing a belief or characteristic a persecutor sought to overcome.").

The respondent has not established that the FARC has any desire to punish or overcome his status as a former police officer, or any animus toward former police officers as a group. The respondent's feared future harm is based on the physical assault and subsequent threat he received by the FARC when he was a then-serving police officer. The Immigration Judge found, and the respondent admitted, that the FARC targeted him because of his involvement in a law enforcement operation that confiscated military materials and cattle held by the rebel group and compromised their criminal enterprise—official actions that a former police officer would no longer be authorized to conduct.

Reprisals against former police officers as a class (for example, after a coup or revolution) may give rise to asylum eligibility.[5] *See Matter of C-A-*, 23 I&N Dec. at 958–59; *Matter of Fuentes*, 19 I&N Dec. 658, 662 (BIA 1988). However, the respondent here established only that the FARC harmed him in the past and may harm him in the future to punish him because of official acts he took as a then-current police officer. Harm inflicted on

_____

(citation omitted). Therefore, any group relying on the respondent's then-current employment as a police officer would not be cognizable.

[5] Even if, in an appropriate case, there is evidence that some former police officers are targeted based on their former status, a respondent would still need to establish that he or she is similarly situated to those former police officers, such that there is a sufficient likelihood that he or she would be persecuted based on his or her former status. Factors such as the type of law enforcement position the respondent was in or the length of time the respondent was in that position may be relevant to that analysis.

account of specific conduct as a then-current police officer is distinct from harm inflicted on account of membership in a group of former police officers. *See Sanjaa*, 863 F.3d at 1165 (holding that personal retribution suffered by a former police officer because of actions taken while a current police officer is not persecution on account of a protected ground).

Here, the only harm the respondent experienced after he resigned from the National Police in August 2022 was one threatening phone call while temporarily in Bogotá. The Immigration Judge found, without clear error, that none of the harm or threats received by the respondent—including this phone call—were on account of his status as a former police officer. Rather, the Immigration Judge found that the respondent "believes the FARC may seek revenge because of the operations in which he participated as a police officer against the criminal organization." Reprisals against police officers based on specific conduct or official acts are not on account of being a former police officer. *See Ayala v. Holder*, 640 F.3d 1095, 1098 (9th Cir. 2011) ("[I]f a former police officer [is] singled out for reprisal, not because of his status as a former police officer, but because of his role in disrupting particular criminal activity, he [is] not . . . considered, without more, to have been targeted as a member of a particular social group." (alterations in original) (quoting *Matter of C-A-*, 23 I&N Dec. at 958–59)). The respondent has conceded that the FARC's motive is and was premised on his past conduct as a police officer, not his current status as someone who has been a police officer in the past.

Where a particular social group is defined by "former" status, Immigration Judges must ensure the persecutor's conduct was based on a desire to overcome or animus toward the respondent's membership in a group defined specifically by that former status, not retribution for conduct the respondent engaged in while a current member of the group. *See Matter of Fuentes*, 19 I&N Dec. 658, 660–62 (differentiating between the two). Here, the Immigration Judge properly concluded that the respondent had not established a nexus between his past and feared future harm and his current status as a former police officer in Colombia.

### B. Particular Social Group Based on Risk of Harm

We agree with the Immigration Judge that the respondent's proposed group of "men in Colombia the government is unwilling/unable to protect" is impermissibly circular because it is defined by the members' risk of harm. A particular social group cannot be "circularly defined by the fact that [its members] suffer[] persecution." *Matter of S-E-G-*, 24 I&N Dec. at 584 (quoting *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005)). While

harm may be evidence of the group's existence, the group must exist independently of the harm suffered. *See Matter of C-A-*, 23 I&N Dec. at 960. Here, the proposed group of "men in Colombia the government is unwilling/unable to protect" is defined by the risk of harm faced by members of the group.

We have explained that "[w]here an applicant raises membership in a particular social group as the enumerated ground that is the basis of her claim, she has the burden to clearly indicate 'the exact delineation of any particular social group(s) to which she claims to belong.'" *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 191 (BIA 2018) (quoting *Matter of A-T-*, 25 I&N Dec. 4, 10 (BIA 2009)), *aff'd*, *Cantarero-Lagos v. Barr*, 924 F.3d 145 (5th Cir. 2019). Thus, when evaluating whether a particular social group is cognizable, Immigration Judges generally should consider the entire group as it is defined by the respondent.[6] The group as defined here is impermissibly circular and is therefore not a cognizable particular social group.

Based on the foregoing, the respondent has not established that any harm he experienced or fears is on account of a statutorily protected ground. Thus, because the respondent has not established a nexus between the claimed harm and a protected ground, he is not eligible for asylum or withholding of removal. INA §§ 208(b)(1)(B)(i), 241(b)(3)(A), 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A). Because the co-respondents' applications are based on the lead respondent's claim and they did not identify any other proposed particular social groups, they are likewise ineligible for asylum and withholding of removal.

---

[6] The respondent does not argue that this case is controlled by *Diaz-Reynoso v. Barr*, 968 F.3d 1070 (9th Cir. 2020), but even if it had been properly raised, it would make no difference. The United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, has held that the "the mere mention of harm does not categorically disqualify an otherwise cognizable social group." *Id.* at 1085. Here, however, the harm included in the respondent's proposed group definition does not merely describe the risk common to all "men in Columbia," but rather defines a different and narrower group of "men in Colombia the government is unwilling/unable to protect." Removing the language concerning the risk of harm would change the membership of the group. The risk of harm is therefore an intrinsic element of the group definition, and because it is intrinsic, it cannot be disregarded as merely descriptive.

C. Eligibility for CAT Protection

Finally, we affirm the Immigration Judge's conclusion that the respondents did not establish eligibility for CAT protection. The respondents' reference to general country conditions evidence reflecting human rights issues and the prevalence of crime in Colombia is insufficient to demonstrate that it is more likely than not that they will be tortured in Colombia by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity. *See* 8 C.F.R. § 1208.16(c)(2) (2025); 8 C.F.R. § 1208.18(a)(1) (2020); *see also Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (holding that generalized country conditions evidence of violence and crime that is not particular to the applicant does not establish CAT eligibility).

Acquiescence in the CAT context requires a greater degree of governmental complicity than is required to establish a government is unable or unwilling to protect a respondent in the asylum context. *See Azanor v. Ashcroft*, 364 F.3d 1013, 1019 (9th Cir. 2004) (acknowledging that "consent or acquiescence" as required by the CAT involves more than showing "that public officials would be merely unable or unwilling to prevent torture by private parties"). Evidence that a government has been generally ineffective in preventing or investigating criminal activities does not alone establish that a public official will acquiesce to torture. *Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014); *see also Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016) (recognizing that "general ineffectiveness . . . to investigate and prevent crime will not suffice to show acquiescence and the "inability to bring the criminals to justice is not evidence of acquiescence, as defined by the applicable regulations"). Simply showing an inability of a public official to prevent torture is insufficient. *See Garcia-Milian*, 755 F.3d at 1034 ("[A] government does not acquiesce to torture of its citizens merely because it is aware of torture but powerless to stop it." (quoting *Mouawad v. Gonzales*, 485 F.3d 405, 413 (8th Cir. 2007))); *see also* 8 C.F.R. § 1208.18(a)(7) (stating that acquiescence requires a public official "breach his or her legal responsibility to intervene to prevent such activity"). Here, the respondents have not established that it is more likely than not that they will be tortured by or with the consent or acquiescence—including willful blindness—of a Colombian official or other person acting in an official capacity. *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). Accordingly, we will dismiss the respondents' appeal.

**ORDER:** The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation.  *See* INA § 274D, 8 U.S.C. § 1324d (2018); 8 C.F.R. § 280.53(b)(14) (2025).