# Matter of F-B-A-, Respondent

*Decided February 20, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The unique barriers to reporting harm faced by children do not apply to adults, including adults who suffered harm as children. *Matter of C-G-T-*, 28 I&N Dec. 740 (BIA 2023), clarified.

(2) Given the size of Russia, the respondent's membership in the country's majority religion, and the insufficient evidence demonstrating her family maintains an interest in locating her more than 2 years after they last threatened her, the Immigration Judge's finding that the respondent could not reasonably relocate to avoid persecution is clearly erroneous.

FOR THE RESPONDENT:  Irina Rusanova, Esquire, Mountlake Terrace, Washington

BEFORE:  Board Panel:  MULLANE, HUNSUCKER, and GEMOETS, Appellate Immigration Judges.

HUNSUCKER, Appellate Immigration Judge:

This case was last before the Board on November 7, 2025, when we sustained the Department of Homeland Security's ("DHS") appeal of the Immigration Judge's March 14, 2025, decision granting the respondent's application for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2024).  In sustaining DHS' appeal, we vacated the Immigration Judge's decision and ordered the respondent removed.  On November 10, 2025, the respondent, a native of Tajikistan and citizen of Russia, filed a timely motion to reconsider.[1]

Based on the particular arguments raised in the respondent's motion and our own authority, we will grant the motion to reconsider for the purpose of further clarifying the reasoning in our November 7, 2025, decision.  *See* 8 C.F.R. § 1003.2(a) (2026) ("The Board may at any time reopen or reconsider . . . any case in which it has rendered a decision.").  Upon reconsideration, we will again sustain DHS' appeal and order the respondent removed.

---

[1]  On November 19, 2025, the respondent filed an addendum to her motion to reconsider. The motion, including the addendum, has been considered in its entirety.

## I.  FACTS AND PROCEDURAL HISTORY

The respondent is an unmarried adult woman who fears harm from her family, including her parents, brother, and cousin, due to her conversion from Islam to Russian Orthodox Christianity.  Specifically, the respondent described a variety of harms she experienced at the hands of her family due to her resistance to Islam and later due to her conversion to Christianity.  The respondent also explained that she fears future harm because members of her family threatened to kill her for apostasy, and her brother threatened to cut off her head for the shame and humiliation that she caused.

The Immigration Judge found the respondent credible and concluded that based on her credible testimony, her corroborative evidence, and the country condition evidence in the record, the respondent established a well-founded fear of persecution.  On appeal, DHS did not challenge the Immigration Judge's determination that the respondent is likely to be persecuted or killed by her family due to her conversion from Islam to Russian Orthodox Christianity.  Instead, DHS challenged the Immigration Judge's determination that Russian authorities would be unable or unwilling to protect the respondent and the Immigration Judge's finding that the respondent could not relocate to avoid future harm.

We agreed with DHS that the Immigration Judge's finding that authorities in Russia would be unable or unwilling to protect the respondent was clearly erroneous.  *See Matter of C-G-T-*, 28 I&N Dec. 740, 743 (BIA 2023) ("Whether a government is unable or unwilling to protect an individual from persecution is a question of fact we review for clear error.").  Specifically, we concluded that the Immigration Judge erroneously relied on evidence regarding domestic violence when the respondent's fear was based on religious persecution.  We concluded that evidence of general country conditions pertaining to domestic violence was insufficient to establish the inability or unwillingness of the Russian Government to protect the respondent from harm by her family due to her conversion to Russian Orthodox Christianity.  We also noted that the respondent had not established that her family had influence over the police, such that seeking police assistance would have been futile.

## II. ANALYSIS

The respondent argues in her motion to reconsider that the Immigration Judge properly concluded that it would be pointless or dangerous for her to have sought help from authorities.  While a failure to report harm is "not necessarily fatal" to a respondent's claim of persecution, the reasonableness

of the respondent's failure to seek assistance from authorities is a significant factor that must be considered along with other evidence regarding whether the government was unable or unwilling to protect the respondent. *See Matter of C-G-T-*, 28 I&N Dec. at 743–44 (citation omitted).

The respondent refers to our decision in *Matter of C-G-T-* and asserts that the social and psychological circumstances in which she was raised were so repressive and coercive that reporting her harm would have been futile and subjected her to additional harm. She further argues that our prior decision failed to recognize the impact that the sexual abuse she suffered as a youth and her upbringing in a "strict Muslim household" had on her ability to seek assistance from the authorities in Russia.

In *Matter of C-G-T-*, we addressed the circumstances of a respondent who was abused by his father as a child and acknowledged that it may be futile or dangerous for a child who is being abused by a relative to report this harm to authorities. 28 I&N Dec. at 743–44. We noted that due to their age, children, particularly young children, might be unable to recognize mistreatment as abuse, articulate their fear, or seek help from governmental authorities. *Id.* Further, we recognized that children under the control of their abuser could be prevented from contacting the authorities. *Id.* at 743. Therefore, we concluded that the personal circumstances of a child respondent are relevant to the factual determination regarding the child's ability to seek protection from the authorities in his or her country. *See id.* at 744.

The flaw in the respondent's argument is that our decision in *Matter of C-G-T-* outlines the unique barriers *children*, especially young children, may have in attempting to report harm to authorities. Such unique barriers to reporting harm faced by children do not apply to adults, including adults who suffered harm as children.

While the respondent began experiencing harm at the hands of her family as a child, this harm continued well into adulthood and the respondent still failed to report it to the authorities. As an adult the respondent traveled to different cities far away from her family, and at times lived outside of her family's control, yet she never sought assistance or protection from the police or other authorities. Although the respondent argues that her family maintains connections with the police in her town such that reporting her harm would have been futile or dangerous, the respondent's status as an adult, her ability to travel apart from her family, and her ability to communicate, all demonstrate that the respondent could have requested assistance from the authorities in her country.

Without any citation to the record, the respondent also argues that "record evidence" contradicts our conclusion that her conversion to Russian Orthodox Christianity makes police protection more likely. However, the respondent's conversion makes her a member of the country's majority religion, and the record reflects that the Russian Orthodox Church maintains a privileged status in Russia and works closely with the Russian Government. Given these facts, the respondent has not established that her family members, who practice Islam, would be able to meaningfully influence the Russian authorities.

Nor has the respondent established that the Russian Government would be unable or unwilling to protect her from those who would seek to harm her for converting to Russian Orthodox Christianity. *See Mejia-Alvarenga v. Garland*, 95 F.4th 319, 324 (5th Cir. 2024) ("To prove that a government is unable or unwilling to protect against private persecution, an applicant for asylum 'must show that the government condoned the private violence "or at least demonstrated a complete helplessness to protect the [applicant.]"'" (citation omitted)). While the respondent presents documentary evidence of violence faced by women in certain areas of Russia at the hands of their Muslim families and evidence suggesting that these women are often returned to their families by the local authorities, this evidence does not address interfaith violence or whether the Russian Government would protect a convert to Russian Orthodox Christianity from harm committed by Muslim family members. Overall, the Immigration Judge clearly erred in finding that the Russian Government would be unable or unwilling to protect the respondent from the family members she fears. *See Matter of C-G-T-*, 28 I&N Dec. at 744 ("A mere 'subjective belief' that reporting would be futile is not sufficient to establish that a government is unable or unwilling to provide protection." (citation omitted)); *see also Sanchez-Amador v. Garland*, 30 F.4th 529, 534 (5th Cir. 2022) (finding that the respondent's subjective belief that it was futile to report crime to authorities paired with general evidence of ineffectiveness is insufficient to establish that the government was unable or unwilling to protect her).

The Immigration Judge's finding that the respondent cannot avoid future persecution by relocating within Russia is also not supported by the evidentiary record and thus clearly erroneous. *See Matter of F-R-A-*, 28 I&N Dec. 460, 470 (BIA 2022) (stating that the Board reviews for clear error the Immigration Judge's factual finding that an alien can avoid harm by relocating); *Matter of D-I-M-*, 24 I&N Dec. 448, 451 (BIA 2008) (remanding to the Immigration Judge to determine relocation because of the Board's limited fact-finding abilities); *see also* 8 C.F.R. § 1208.13(b)(2)(ii) (2020) (stating that an applicant does not have a well-founded fear of persecution if

he or she could avoid persecution by relocating to another part of his or her country, if under all the circumstances, it would be reasonable to expect him or her to do so). Where, as here, a respondent fears harm at the hands of private actors, he or she bears the burden of establishing that it would not be reasonable to relocate. 8 C.F.R. § 1208.13(b)(3)(i). In determining that the respondent could not internally relocate, the Immigration Judge relied on a single article to find that the respondent would have to register her address wherever she moved and that her family could and would employ a variety of methods including filing a false police report with the assistance of Russian authorities to locate the respondent.

We acknowledge the respondent's assertion that she attempted to relocate on one occasion in the past and was located by her family. However, given the size of Russia, the respondent's membership in the country's majority religion, and the insufficient evidence demonstrating her family maintains an interest in locating her more than 2 years after they last threatened her, the Immigration Judge's finding that the respondent could not reasonably relocate to avoid persecution is clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) ("[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (citation omitted)).

Because the respondent has not established that the Russian Government was or would be unable or unwilling to protect her and that internal relocation would be unreasonable, she is ineligible for asylum. *See Mejia-Alvarenga*, 95 F.4th at 324; 8 C.F.R. § 1208.13(b)(2)(ii). It necessarily follows that she cannot establish eligibility for withholding of removal, which likewise requires a showing that the government is unable or unwilling to protect her and that she cannot internally relocate. *See Gonzales-Veliz v. Barr*, 938 F.3d 219, 228–29 (5th Cir. 2019); 8 C.F.R. § 1208.16(b)(2) (2026). As these findings are dispositive, we do not reach any remaining arguments pertaining to the respondent's applications for asylum and withholding of removal. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

The respondent also asks that we reconsider our decision regarding her application for protection under the Convention Against Torture ("CAT"),[2]

---

[2] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. § 1208.16(c)(2); 8 C.F.R. § 1208.18(a) (2020).

claiming we ignored relevant facts related to her fear of torture and that remand is necessary.  We are not persuaded that remand is necessary because the record evidence cannot establish that it is more likely than not the respondent will be tortured upon removal to Russia by, at the instigation of, or with the consent or acquiescence of a public official.  *See* 8 C.F.R. § 1208.16(c)(2); 8 C.F.R. § 1208.18(a)(1) (2020); *see also Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) (holding that remand is not necessary where "the record permits only one resolution of a factual issue"); *Ball v. LeBlanc*, 792 F.3d 584, 596 (5th Cir. 2015) (same).

The record reflects that the respondent has not demonstrated an inability to relocate within Russia to avoid future harm by her family.  The availability of internal relocation is relevant and weighs against a grant of protection.  *See* 8 C.F.R. § 1208.16(c)(3)(ii) ("[A]ll evidence relevant to the possibility of future torture shall be considered, including . . . [e]vidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured."); *see also Tzompantzi-Salazar v. Garland*, 32 F.4th 696, 705 (9th Cir. 2022) (explaining that "the reasonableness of a relocation is not relevant to a CAT claim, where the agency considers only whether safe relocation is possible, not whether it is reasonable (or comfortable or convenient)," and that the respondent bears the overall burden of proof to show he or she will more likely than not experience torture).

Additionally, as the respondent has failed to demonstrate that the authorities would be unwilling or unable to protect her from the family members she fears, the respondent has consequently failed to demonstrate that a public official acting in an official capacity would acquiesce to her torture by these family members.  *See Matter of O-A-R-G-*, 29 I&N Dec. 30, 36 (BIA 2025) ("Acquiescence in the CAT context requires a greater degree of governmental complicity than is required to establish a government is unable or unwilling to protect a respondent in the asylum context.").  Thus, the respondent cannot establish her eligibility for protection under the CAT.  Accordingly, although we will grant the respondent's motion to reconsider, we will once again sustain DHS' appeal.

**ORDER:**  The respondent's motion to reconsider is granted.

**FURTHER ORDER:**  DHS' appeal is sustained.

**FURTHER ORDER:**  The previously issued stay of removal is vacated.

**FURTHER ORDER:** The Immigration Judge's decision granting asylum, dated March 14, 2025, is vacated, and the respondent is ordered removed from the United States to Russia.

**NOTICE:** If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(A) (2024).